FILED
MAY 25 2001
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.
MONTGOMERY, ALA.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**CIVIL ACTION NO. 00-D-225-N**

VICTORIA SCOTT KEARLEY,
Plaintiff,

v.

EQUIFAX, INC., EQUIFAX DIRECT MARKETING SOLUTIONS, INC., EXPERIAN INFORMATION SERVICES, INC.,
Defendants.

**EXPERIAN'S RENEWED MOTION TO SEVER CLAIMS AND TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS**
**[F.R.C.P. Rules 20, 21 and 28 U.S.C. §1404(a)]**



## I. PRELIMINARY STATEMENT

Experian hereby renews its prior May 5, 2000 motion to sever claims and transfer venue to the Northern District of Texas. The Court had not ruled on Experian's original motion before Plaintiff filed her Second Amended Complaint dismissing Experian. Experian now is again a party in the operative, Third Amended Complaint, and Experian hereby renews its motion to sever and transfer.

## II. INTRODUCTION

Plaintiff attempts to litigate separate claims, against two distinct businesses, involving varying products, governed by different legal standards, all in a single action. Because the claims against the named defendants do not arise from the same series of transactions or occurrences, nor do they involve common questions of fact and law, all claims asserted against defendant Experian Information Solutions, Inc. ("Experian") should be severed and adjudicated separately. In addition, because the District Court for the Northern District of Texas already has entered a consent order which governs Experian -- but not the two Equifax defendants -- the interests of justice require that the claims against Experian, once severed, be transferred to the Northern District of Texas.

## III. BACKGROUND

Experian is a consumer credit reporting agency and a business competitor of defendant Equifax. (Bufford Decl. ¶¶ 2, 7)[1] As a credit reporting agency, Experian's credit reporting business is governed by the Fair Credit Reporting Act, 15 U.S.C. §§1681 et seq. ("FCRA"). (Id. at ¶ 2) The Federal Trade Commission ("FTC") is the

[1]The Declaration of Julie Bufford is attached hereto as Exhibit "B."

administrative agency authorized to enforce the FCRA. (Id.) In addition to complying with the FCRA, Experian's products are sold in conformity with a consent order, not expressly applicable to its chief competitors. (Id.) See Federal Trade Commission v. TRW Inc., 784 F. Supp. 361 (N.D. Tex. 1991), as amended per January 14, 1993 Agreed Order Amending Consent Order (the "Consent Order").[2]

On April 26, 2001, Plaintiff filed her Third Amended Complaint, a purported class action lawsuit against Experian, Equifax, Inc. and Equifax Direct Marketing Solutions, Inc. (collectively, "Equifax"). Plaintiff claims that defendants have violated the FCRA by providing "information" which Plaintiff contends constitutes "consumer reports" under the FCRA, without adhering to the FCRA's requirements. What types of information and what types of disclosures remain unclear.[3]

What is clear is that the claims against Experian are separate and distinct from the claims against Equifax. There is no meaningful factual overlap among the

---

[2]On September 19, 1996, TRW effected a transfer of the ownership and control of its Information Systems & Services business, including the credit-reporting and target marketing business, to a group of investors. (Bufford Decl. ¶ 4) Upon the transfer of ownership and control of TRW's Information Systems & Services business, the new entity was known as Experian. (Id.) Experian and TRW are not related corporate entities. (Id. at ¶ 5) However, Experian succeeded to TRW's rights and obligations under the Consent Order and operates pursuant to its terms. (Id. at ¶ 6)

Pursuant to FED. R. EVID. 201, the Court is requested to take judicial notice of the Consent Order, as amended, a true and correct copy of which is attached hereto as Exhibit "A."

[3]On April 24, 2000, Experian filed a Motion for a More Definite Statement of Plaintiff's original complaint. On June 2, 2000, Experian filed its second Motion for a More Definite Statement, based on Plaintiff's First Amended Complaint. Experian filed its pending, third Motion for a More Definite Statement on May 23, 2001, based on Plaintiff's Third Amended Complaint.

claims against each defendant as each defendant develops, markets and sells their own unique, proprietary products. (Bufford Decl. ¶ 8) Furthermore, given the Consent Order applicable only to Experian, the available legal defenses differ among the defendants. Therefore, Experian asks that this Court sever Plaintiff's claims against Experian and transfer the case against Experian to the Northern District of Texas, the district court which entered the Consent Order.

## IV. ALL CLAIMS AGAINST EXPERIAN SHOULD BE SEVERED

This Court should exercise its discretion and sever the case against Experian because joinder of Experian and Equifax is improper under Federal Rule of Civil Procedure 20(a). Joinder is improper because Plaintiff's claims against the named defendants do not arise out of the same transaction or occurrence or series of transactions or occurrences. In addition, even if some aspects of permissive joinder are present, Experian nonetheless should be severed pursuant to the Court's discretionary powers, to avoid jury confusion and to further the efficient administration of justice.

### A. Experian Should Be Severed Because the Claims Do Not Arise Out of the Same Series of Transactions or Occurrences.

A party seeking joinder of defendants under Federal Rule of Civil Procedure 20(a) must establish: (1) a right to relief jointly, severally or in the alternative, arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) any question of law or fact common to all parties to be joined. See FED. R. CIV. P 20(a); Alexander v. Fulton County, No. 97-8189 2000 U.S.App. LEXIS 5803 (11th Cir. March 30, 2000). Both of these requirements must be satisfied. See id. If the test for

permissive joinder is not satisfied, the court has discretion to sever misjoined parties "on such terms as are just." FED. R. CIV. P. 21; see Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Plaintiff's claims against Experian and Equifax do not arise out of the same series of transactions or occurrences. Throughout her complaint, Plaintiff refers to Experian and Equifax in the collective. Yet, while the companies are in the business of collecting and selling information, and while they each are alleged to have violated provisions of the FCRA, they have nothing more in common as defendants.

Experian and Equifax are direct business competitors. (Bufford Decl. ¶ 7) Experian independently designs, develops and sells its own unique, proprietary products. (Id. at ¶ 8) Experian's proprietary databases of information have been separately engineered. (Id.) Experian employs its own sales force, technical support staff, production staff and marketers. (Id.) While there may be some basic factual overlap given that defendants are in the same line of business -- much like Pepsi, Coca-Cola and 7-UP all sell beverages -- there is little or no meaningful factual overlap among Plaintiff's claims against them. Specifically, Plaintiff's claims against each of the defendants necessarily involve:

- different products;
- different proprietary sources of information;
- different technology;
- different witnesses; and,

- different disclosures of information, regarding different consumers, at different points in time.

In short, the claims against each defendant have little more in common than that they are consumer credit reporting claims.

Because Experian and its competitors act independently in creating, marketing and selling their products, the companies' individual sales of their own products cannot be said to arise out of the same series of transactions or occurrences, and Plaintiff's claims against Experian should be severed. See Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996) (finding joinder not only improper but fraudulent where only similarities between two defendant classes in class action were allegations of violations of Alabama code); Bennett v. School Directors of Dist. 115, No. 96 C 2422 1996 U.S.Dist. LEXIS 12466 (N.D. Ill. Aug. 28, 1996) (ordering severance where actions of defendant school boards and superintendents alleged to constitute discrimination were distinct and plaintiff failed to allege a joint course of conduct); Nassau County Assoc. of Ins. Agents Inc., v. Aetna Life & Casualty Co., 497 F.2d 1151 (2d. Cir. 1974) (finding no common transaction or occurrence and ordering severance where actions of defendant insurance companies in terminating contracts were separate and unrelated, and where no conspiracy or other concert of action alleged); Tele-Media Co. of Western Conn. v. Antidormi, 179 F.R.D. 75 (D. Conn. 1998) (finding joinder improper and ordering severance where plaintiff failed to allege conspiracy or joint action on the part of 104 individual defendants claimed to have used an altered converter to cause unauthorized television reception); Response Oncology, Inc. v. The Metrahealth Ins. Co., 978 F. Supp.

1052 (S.D.Fla. 1997) (finding joinder improper and ordering severance where plaintiff medical care provider failed to allege joint, several or alternative liability on the part of defendant companies charged with failing to pay for various medical treatments administered to defendants' employees under different insurance plans); Cohen v. Dist. of Columbia Nat'l Bank, 59 F.R.D. 84 (D.D.C 1972) (denying motion to join defendant banks in action for violation of usury laws because substantial variations in the banks' loan policies and practices precluded finding that plaintiffs' claims arose out of same transaction or occurrence or series of transactions or occurrences).

In Tapscott v. MS Dealer Service Corp., No. CV 94-PT-2027-S, 1994 U.S. Dist. LEXIS 20899 (N.D.Ala. Nov. 1, 1994) (memorandum opinion), the District Court for the Northern District of Alabama found joinder improper, fraudulent and "bordering on a sham" where plaintiff sought to join as defendants a retail store and several automobile dealers in an action alleging violations of the Alabama Code arising from the sale of service contracts. The court stated, "[t]here is no allegation of joint liability of Lowe's with any other defendant, nor is there any allegation of a conspiracy. The court rejects plaintiffs' argument that a mere allegation of a common business practice subjects all defendants to joinder." Id. at *2. The Eleventh Circuit, reviewing only the district court finding of fraudulent joinder, affirmed, finding plaintiff's attempted joinder "so egregious as to constitute fraudulent joinder." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 at 1360.

Like the plaintiff in Tapscott, Plaintiff here has not alleged joint liability or conspiracy among Experian and Equifax. Instead, Plaintiff has joined the defendants

based solely on the allegation of a common and largely unspecific business practice -- selling information in violation of the FCRA.[4] This is not sufficient to establish the same "series of transactions or occurrences" required under Federal Rule of Civil Procedure 20. See Nassau County Assoc. of Ins. Agents, Inc., v. Aetna Life & Casualty, 497 F.2d 1151 (2d Cir. 1974). In Nassau, plaintiff insurance agents sought to join 164 insurance companies as defendants in an action alleging that the insurance companies had terminated or threatened to terminate agency contracts in violation of federal antitrust laws. See id. at 1152. The Second Circuit held this joinder not only improper but a "gross abuse of procedure." See id. at 1154. According to the court, the actions of the insurance companies "were separate and unrelated, with terminations occurring at different times for different reasons with regard to different agents." Id. Similarly, defendants here, while all in the information business, sell different products to different customers in a wide range of differing factual contexts.

**B. This Court Should Sever Experian to Avoid Jury Confusion And to Further The Efficient Administration of Justice.**

In addition, this Court should sever Plaintiff's case against Experian to avoid jury confusion and to further the efficient administration of justice. Although Federal Rule of Civil Procedure 21 is titled "Misjoinder and Non-Joinder of Parties," the ability to sever claims under Rule 21 is not limited to curing misjoinder of parties. See, e.g., United States v. O'Neil, 709 F.2d 361, 369 (5th Cir. 1983) (affirming severance of

---

[4]In addition, Experian's informational products are sold in conformity with the Consent Order which does not expressly apply to Equifax. Thus, questions of law are not common among the defendants.

defendants' counterclaims because counterclaims logically separable from government's claim of overpayment); Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968) (holding that severance may be ordered solely to facilitate transfer of venue); Sporia v. Pennsylvania Greyhound Lines, Inc., 143 F.2d 105 (3d Cir. 1944) (affirming severance of co-plaintiff to allow defendant to join co-plaintiff as an additional defendant); Safeco Ins. Co. v. City of White House, 36 F.3d 540, 546 (6th Cir. 1994) (approving severance of properly joined non-diverse party for purpose of retaining diversity jurisdiction); see also 4 James Moore et. al. MOORE'S FEDERAL PRACTICE 21.02 (3d ed. 1997) ("courts have properly concluded that they may issue orders under Rule 21 even in the absence of misjoinder or non-joinder of parties, to structure a case for the efficient administration of justice.")

Severance is appropriate in this case because the facts necessary to decide whether Experian and Equifax have violated the FCRA are different for each defendant making a single trial inefficient. As discussed above, the FCRA restrictions apply only to informational products that qualify as "consumer reports." Experian, like Equifax, sells a variety of different products to different customers. Thus, it will be necessary for the fact finder to evaluate the specific characteristics of each product alleged to have been sold in violation of the FCRA. In particular, the trier of fact must consider the type of information included in the product, the manner in which the information is collected, the manner in which the information is presented and the purpose for which the information is sold, as each of these characteristics bears on whether a specific product constitutes a "consumer report." See 15 U.S.C. §1681a(d) (defining "consumer report").

Given the defendant-specific, fact-intensive nature of the issues presented in this case, a single trial will not promote efficiency and will likely result in jury confusion. Severance is, therefore, appropriate to avoid jury confusion and to further the efficient administration of justice. See e.g. Delce v. Nat'l Passenger Railroad Corp., 180 F.R.D. 316 (E.D. Tex. 1998) (severing claims of plaintiffs injured on different Amtrak trains at different times in different locations because single trial would be "unwieldy" and "potentially confusing" to trier of fact); A-1 Cigarette Vending Inc., v. U.S., 40 Fed. Cl. 643 (1998) (severing claims in regulatory takings case because "necessity of conducting plaintiff-specific findings . . . renders inappropriate the large, multi-party case contemplated by plaintiffs."); CVI/Beta Ventures, Inc., v. Custom Optical Frames, Inc. et. al., 896 F. Supp. 505 (D. Md. 1995) (severing defendant's counterclaim in patent infringement because of potential jury confusion that would result from jury having to consider separate eyeglass frames, separate patent claims and specifications, separate file histories, and separate affirmative defenses).

The difficulty posed by joining all defendants in this case is made more clear when one considers the purpose behind the permissive joinder rule and the contrary effect of joinder here. "[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes thereby eliminating unnecessary lawsuits." Alexander 2000 U.S.App. at *31. Joinder is efficient where there is evidence in common among the parties. In such a case, the interests of efficiency and expediency are served because the same evidence that would be presented in several separate trials need be presented only once in a trial where parties are joined. Joining all defendants in this case

will not further this purpose as the trier of fact will be required to understand and evaluate each particular product sold by each defendant.[5] This inevitability will not achieve either "trial convenience" or "expedite the resolution of disputes" as envisioned by Federal Rule of Civil Procedure 20. Alexander, 2000 U.S.App. at *31. Joinder here merely results in this Court conducting two separate trials in one because of the complete lack of common evidence between defendants.

## V. THE CLAIMS AGAINST EXPERIAN SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS

After severing the claims against Experian pursuant to Federal Rule of Civil Procedure 21, Experian requests that the separate case against it be transferred to the Northern District of Texas, the district which entered the Consent Order. In addition to the interests of justice being served in light of the Consent Order, the balance of conveniences requires that this case be transferred: Plaintiff filed suit in the Middle District of Alabama, home only to the named plaintiff in this case, while likely witnesses and sources of proof are located in Texas.

This Court has authority pursuant to 28 U.S.C. section 1404(a) to transfer this case to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." Courts considering a motion to transfer must engage in "an individualized case-by-case consideration of convenience and fairness." Stewart Organization, Inc., v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). Factors to be

---

[5]The applicable law is different among the defendants as well. See fn. 4, supra.

considered include the convenience of the parties and witnesses; the location of documents and other sources of proof; the relative ability of the parties to bear the expense of changing the forum; and trial efficiency and expense to the justice system. See Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947). An additional factor applicable here is whether the case involves interpretation or enforcement of a court order entered by another court. See e.g. Blue Diamond Coal Co. v. Michigan Sugar Co., 463 F. Supp. 14 (E.D. Tenn. 1978) (transferring case requiring interpretation of settlement agreement to district court that oversaw and accepted settlement agreement)

The convenience of the parties and witnesses and the interests of justice will be served by a transfer to the Northern District of Texas because: (1) Experian's connection to the Middle District of Alabama is no greater than that for the vast majority of districts within the United States, *i.e.*, Experian has no special connection to this District; (2) Experian's conduct as a seller of information products is governed by a consent decree entered into in the Northern District of Texas; (3) likely witnesses reside in Texas; (4) Experian's consumer credit database is located in Texas; and (5) Plaintiff's choice of forum is given little deference because the activities giving rise to the suit did not occur in this forum and because Plaintiff is suing on behalf of a class.

**A. Venue is proper in the Northern District of Texas.**

In determining the propriety of transferring venue, the court first must determine whether the action could originally have been brought in the proposed transferee district. See Johnston v. Foster-Wheeler Constructors, Inc., 158 F.R.D. 496, 504 (M.D. Ala. 1994). Venue is proper in the Northern District of Texas because "a

substantial part of the events" on which the claim is based occurred in this district. See 28 U.S.C. §1391(b)(2). The Consent Order was entered in the Northern District of Texas, and likely witnesses reside in the Northern District of Texas.

B. **Transfer to the Northern District of Texas is Proper Because of the Consent Order.**

Transfer to the Northern District of Texas is appropriate because this case implicates the Consent Order entered by that district. The January 14, 1993 Amendment to the Consent Order allows Experian to use certain types of information in compiling its consumer lists. See Exhibit "A" (allowing Experian to use "name, telephone number, mother's maiden name, address, zip code, year of birth, age, any generational designation, social security number, or substantially similar identifiers, or any combination thereof" in its informational products). Therefore, in determining whether Experian sold "consumer reports" in violation of the FCRA, it will be necessary to consider and apply this Consent Order. Because the Northern District of Texas entered this Order it is in the interests of justice that this case be transferred to the Northern District of Texas. See Blue Diamond Coal Co. v. Michigan Sugar Co., 463 F. Supp. 14 (E.D. Tenn. 1978) (transferring case requiring interpretation of settlement agreement to district court that oversaw and accepted settlement agreement); Randall v. Jenkins, 271 F. Supp. 904 (E.D. Penn. 1967) (transferring case involving dispute over method of filling vacancy on board of overseers to court that ordered decree governing selection process where transferee court in its decree expressly retained jurisdiction over parties and controversy); see also American

Federation of Govt Employees v. Weinberger, No. CV486-353 1987 U.S. Dist. LEXIS 4391 *4-*5 (S.D. Ga. June 1, 1987) ("It is generally preferable, moreover, that the court first acquiring jurisdiction over a matter should be deferred to by courts in which subsequent actions concerning the same matter are filed.").

**C. Convenience of the Witnesses and Evidence Favor Transfer to the Northern District of Texas.**

Two important factors in passing on a motion to transfer under 28 U.S.C. section 1404(a) are the convenience of the witnesses and the convenience of securing evidence. See Insuracorp, Inc., v. American Fidelity Assurance Co., 914 F. Supp. 504, 505 (M.D. Ala. 1996). In this case, both factors favor the Northern District of Texas.

Experian's consumer credit database is physically located in Allen, Texas.[6] (Bufford Decl. ¶ 10) Approximately 50 salespersons, sales support persons, technicians, production staff and marketing employees who deal with the sale of Experian's informational products work in Allen, Texas, and many of them reside in the Northern District of Texas. (Id.) Experian is unaware of any likely witnesses or evidence located within the Middle District of Alabama. (Id. at ¶ 11) See, e.g., Ross v. Buckeye Cellulose Corp. 980 F.2d 648 (11th Cir. 1993) (finding transfer in an employment discrimination action proper where employer's plant, employment records, and probable witnesses were located in transferee district).

[6]Allen is approximately 30 miles from Dallas. Dallas is in the Northern District of Texas while Allen is in the Eastern District of Texas.

**D. The Balance of Convenience Outweighs the Minimal Deference Afforded Plaintiff's Choice of Forum.**

While federal courts ordinarily accord great deference to the plaintiff's choice of forum, this deference is lessened considerably where the action is one brought on behalf of a class, see Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518 (1947), and where the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, see Gould v. National Life Ins. Co., 990 F. Supp. 1354, 1358 (M.D. Ala. 1998). Both of these factors apply here to lessen the deference to be given plaintiff's choice of forum.

Plaintiff has filed a nationwide class action with class members drawn from throughout the United States. "Where there are hundreds of potential plaintiffs . . . all of whom could, with equal show of right, go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." See Koster, 330 U.S. at 524; see also Gould v. National Life Ins. Co., 990 F. Supp. 1354.

Additionally, Plaintiff's choice of forum is given less deference because the activities underlying this action did not occur in Alabama. See Gould, 990 F. Supp. at 1358. Experian has its consumer credit database in Texas and has sales, sales support, technical, production and marketing employees in Texas. (Bufford Decl. ¶ 10) While Experian sells its informational products to purchasers in Alabama, it also sells its products to purchasers in every other state. (Id. at ¶ 12) Thus, the fact of sales in Alabama should not support a preference for venue in Alabama over any other state. See

Insuracorp, 914 F. Supp. at 506 (facts that defendant sold products in 46 states and the District of Columbia and had "no significant contacts in Alabama" material in finding that interests of justice and convenience of the parties required transfer).

## VI. CONCLUSION

For all of the foregoing reasons, Experian respectfully requests this Court to sever the claims against it pursuant to Federal Rule of Civil Procedure 21, and to then transfer the separate case against Experian to the Northern District of Texas.

Dated: May 25, 2001

Robin G. Laurie, Esq. (LAU006)
BALCH & BINGHAM
P.O. Box 78
Montgomery, Alabama 36101
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

Daniel J. McLoon, Esq.
JONES, DAY, REAVIS & POGUE
555 West Fifth Street, Suite 4600
Los Angeles, California 90013-1025
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Michelle M. Blum, Esq.
JONES, DAY, REAVIS & POGUE
5 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-3939
Facsimile: (949) 553-7539

Attorneys for Defendant
**EXPERIAN INFORMATION SOLUTIONS, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing on counsel of record by placing said copy in the United States Mail, postage prepaid and properly addressed on this 25th day of May, 2001.

Robert B. Roden, Esquire
Shelby & Cartee
2956 Rhodes Circle
Birmingham, Alabama 35205

D. Coleman Yarbrough, Esquire
2860 Zelda Road
Montgomery, Alabama 36106

Russell Jackson Drake, Esquire
Joe R. Whatley, Jr., Esquire
Charlene P. Cullen, Esquire
Vivian Vines Campbell, Esquire
Whatley Drake, L.L.C.
2323 2nd Avenue North
P. O. Box 10647
Birmingham, Alabama 35202-0647

Kent E. Mast, Esquire
J. Anthony Love, Esquire
Mara McRae, Esquire
Cindy Hanson, Esquire
Kilpatrick Stockton LLP
1100 Peachtree Street, #2800
Atlanta, Georgia 30309

Stephen L. Agin, Esquire
Roger L. Longtin, Esquire
Michael O'Neil, Esquire
Piper Marbury Rudnick & Wolfe
203 N. LaSalle Street - 18th fl.
Chicago, Illinois 60601

OF COUNSEL

EXHIBITS TO THIS DOCUMENT NOT SCANNED